IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL SIMMONS,

        Plaintiff,

    v.

CLATSKANIE SCHOOL DISTRICT 6J,

        Defendant.

Case No.: 3:25-cv-00010-AN

OPINION AND ORDER

---

Plaintiff Paul Simmons brings this action against defendant Clatskanie School District 6J ("defendant" or the "District"), alleging a claim under 42 U.S.C. § 1983 for due process violations and Oregon state law claims for statutory tort, Oregon Family Leave Act interference, and wrongful discharge. On January 14, 2025, defendant moved to dismiss plaintiff's statutory tort claim. After reviewing the parties' filings, the Court finds this matter to be appropriate for decision without oral argument. Local R. 7-1(d). For the reasons stated below, defendant's motion is GRANTED.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When a defendant moves to dismiss a claim under FRCP 12(b)(6), "[d]ismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Id.*

When evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202,

1216 (9th Cir. 2011). While the court must draw all reasonable inferences from the factual allegations in favor of the plaintiff, *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008), the court need not credit legal conclusions that are couched as factual allegations, *Aschroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted).

## BACKGROUND

### A.    Factual Allegations

Defendant employed plaintiff from September 24, 1994, to November 30, 2023. Notice of Removal, ECF [1], Ex. 1 ("Compl."), ¶ 1. Plaintiff's job title at the time of termination was "Transportation Supervisor/Safety Officer/Maintenance-Custodial Supervisor for the District." *Id.*

In late September 2023, plaintiff had learned that his father had been diagnosed with a cancerous mass on his pancreas and abdominal lymphoma. *Id.* ¶ 9. Plaintiff informed his direct supervisor, Superintendent Hudson ("Hudson"), that he would need to take extended time off when his father's condition worsened. *Id.* On November 2, 2023, plaintiff learned that his father had been diagnosed with stage four terminal cancer. *Id.*

On the morning of November 3, 2023, plaintiff took a break from work to manage the stress of his heavy workload and his father's recent cancer diagnosis. *Id.* ¶ 10. Plaintiff did not notify his supervisor because it was "common practice at the District for employees to take breaks during the workday for personal matters without reporting it as leave time." *Id.* During his break, plaintiff drove a District-owned truck, which he could use for personal business, to pick up his hunting rifle from his home. *Id.* ¶¶ 8,

11.  Plaintiff then decided to try to meet his son, who was hunting in the area.  *Id.* ¶ 11.

On his way, plaintiff noticed a deer standing in a field.  *Id.* ¶ 12.  Plaintiff did not see any "no trespassing" signs posted, and no one responded when plaintiff called out.  *Id.*  Plaintiff shot the deer, drove into the field, loaded the deer onto the truck, and drove home.  *Id.*  Plaintiff validated his deer tag through the state's online system.  *Id.*  Plaintiff believed that the field was owned by the Evenson family.  *Id.* ¶ 13.  The Evensons allowed hunting on their property, even where "no trespassing" signs were posted, and had allowed plaintiff to hunt on and drive onto a part of their property the year before.  *Id.*  Megan Evenson ("Evenson") is the Clatskanie School Board ("Board") Chair.  *Id.*

Later that day, police received a report of the incident, investigated, and gave plaintiff a citation for allegedly violating Oregon Revised Statutes ("ORS") §§ 498.002, 498.120, and 163.195.  *Id.* ¶ 14.  Also on that day, Hudson notified plaintiff that plaintiff would be placed on paid administrative leave pending an investigation into the incident and instructed plaintiff to return the truck.  *Id.* ¶ 15.

On November 13, 2023, plaintiff met with Randall Bryant, an external investigator who defendant had hired to conduct the investigation.  *Id.* ¶ 16.  On November 28, 2023, Hudson notified plaintiff that defendant was "considering terminating [plaintiff's] employment due to the pending criminal charges."  *Id.* ¶ 18.

On November 29, 2023, Hudson called plaintiff "as a friend" and said plaintiff had the option of resigning so as to not affect his future job search.  *Id.* ¶ 19.  Plaintiff did not resign.  *Id.*  On November 30, 2023, plaintiff received a letter of termination, stating that he was being terminated "because of the criminal citation and because his conduct shooting a deer on personal time allegedly violated numerous district policies."  *Id.* ¶ 20.  The policies included (1) "Standards for Competent and Ethical Performance of Oregon Educators"; (2) "Weapons in Schools"; (3) "Public Conduct on District Property"; (4) "Authorized Use of District Equipment and Materials"; and (5) "Staff Ethics."  *Id.* ¶ 21.

Although the "termination notice accused him of committing a crime while using a district vehicle, [plaintiff] had not been convicted of any crimes."  *Id.*  Plaintiff also alleges that none of the policies cited in the termination letter apply to him.  *Id.*  Specifically, plaintiff alleges that: (1) he is not a licensed

3

educator subject to the "Standards for Competent and Ethical Performance of Oregon Educators" policy; (2) the "Weapons in Schools" policy only applies to students; (3) his alleged misconduct was off school property, to which the "Public Conduct on District Property" policy did not apply; (4) his use of the truck was not used for private gain as prohibited by the "Authorized Use of District Equipment and Materials" policy; and (5) his personal use of the truck was in compliance with the "Staff Ethics" policy's requirement that any equipment used personally must be available to the public and not be used for private business interests. *Id.* Plaintiff further alleges that, although the letter states that plaintiff "[took] extended leave from work without properly reporting the absence and without notifying [his] supervisor," there is no policy requiring employees to report their absence for a break. *Id.* ¶ 22 (second alteration in original).

After his termination, plaintiff emailed Evenson to request a meeting with the Board. *Id.* ¶ 23. Evenson responded that under ORS § 332.544, "[plaintiff] was not entitled to a post-dismissal board hearing[.]" *Id.* ¶ 23. However, Evenson did offer for plaintiff to "speak to the Board in executive session with the Superintendent, the Superintendent's Secretary, and the media present." *Id.* Plaintiff declined this offer after being told he would not be allowed to bring anyone with him to the session. *Id.*

On January 4, 2024, plaintiff submitted a Tort Claim Notice to the District. *Id.* ¶ 24. The District acknowledged receipt on January 10, 2024. *Id.*

**B.    Procedural History**

Plaintiff initiated this action in Columbia County Circuit Court on November 22, 2024. Defendant timely removed the action to federal court. On January 14, 2025, defendant filed a motion to dismiss plaintiff's second claim for statutory tort. Def. Mot. to Dismiss ("Def. Mot."), ECF [4]. Plaintiff seeks, in relevant part, damages for lost wages and benefits and future lost wages and benefits. Compl. ¶ 38.

**DISCUSSION**

Defendant moves to dismiss plaintiff's statutory tort claim for failure to state a claim. Defendant argues that the Oregon legislature did not expressly or impliedly intend to create a private right

of action for a violation of ORS § 332.544,[1] and the creation of a common-law cause of action is not necessary to make the statute effective.

## A.    Implied Private Right of Action

ORS § 332.544 provides, in relevant part: "A classified school employee shall have the right to be dismissed, demoted, or disciplined only for just cause." Or. Rev. Stat. § 332.544(2). Plaintiff contends that ORS § 332.544 creates an implied cause of action for classified school employees who are fired without cause.

"Statutory liability arises when a statute either expressly or impliedly creates a private right of action for the violation of a statutory duty." *Deckard v. Bunch*, 358 Or. 754, 759, 370 P.3d 478 (2016) (citation modified). "Whether a statute does so is a question of statutory interpretation." *Doyle v. City of Medford*, 356 Or. 336, 344, 337 P.3d 797 (2014) (citations omitted). To determine whether the legislature intended to create a private right of action to remedy a violation of the duty that a statute imposes, a court examines "the text, context, or legislative history of the statute creating the duty." *Deckard*, 358 Or. at 760 (citation modified).

The text, context, and legislative history of ORS § 332.544 do not demonstrate that the Oregon legislature intended to create a private right of action. First, it is undisputed that the text does not expressly create a private right of action. No portion of the statute refers to civil liability. *See generally* Or. Rev. Stat. § 332.544. Plaintiff argues that the use of mandatory language, *i.e.*, "shall," shows that the legislature intended to implicitly create a civil remedy to enforce ORS § 332.544; however, "this argument was foreclosed by the Oregon Supreme Court in *Doyle*." *Lowry v. Univ. of Or. Med. Sch.*, No. 3:16-cv-01049-YY, 2018 WL 5780849, at *8 (D. Or. Sept. 28, 2018) (citing *Doyle v. City of Medford*, 356 Or. 336, 367, 337 P.3d 797 (2014)), *report and recommendation adopted*, 2018 WL 5777482 (D. Or. Nov. 1, 2018). "[M]any statutory obligations are enacted without any legislative intent to confer a private right of action

---

[1] As of April 4, 2024, the Oregon legislature has amended ORS § 332.544(1) through SB 283. The Court refers to the 2023 version of ORS § 332.544, which was in effect at the time of the alleged events, throughout this Opinion and Order.

on a person who is harmed by a violation of the statute . . . . The mere existence of a statutory duty alone does not furnish a shortcut through the [statutory construction] analysis." *Doyle*, 356 Or. at 367. The Court must still assess whether, beyond creating just cause protections, "the legislature intended to 'confer a private right of action on a person who is harmed' when those duties are violated." *E.J.T. by & through InTRUSTment, Nw., Inc. v. Jefferson County*, 370 Or. 215, 230, 518 P.3d 568 (2022) (quoting *Doyle*, 356 Or. at 367).

Second, the context of the statute does not imply a cause of action. No portion of ORS Chapter 332 provides an umbrella of civil liability for the entirety of the chapter. *See generally* Or. Rev. Stat. ch. 332. Plaintiff points to ORS § 332.554 to argue that the legislature contemplated liability for the District. ORS § 332.554 provides, in relevant part: "No liability shall accrue from failure to give the notice required by subsection (1) of this section or from the timing or contents thereof on the part of the school district. However, the State Board of Education shall enforce the provisions of subsection (1) of this section." Or. Rev. Stat. § 332.554(2). However, even if the legislature contemplated liability under ORS § 332.554, it expressly disclaimed a private right of action and instead provided that the State Board of Education would enforce that provision. Even accepting plaintiff's argument that the legislature contemplated some form of liability for violations of ORS § 332.544, the text of ORS § 332.554 expressly rejects the suggestion that such liability would be in the form of a private right of action.

Third, the legislative history does not evince that the legislature intended to create an implied private right of action. Plaintiff cites two written statements in support of the 2023 amendments to the statute submitted by Sarah Drescher on behalf of the Oregon School Employees Association ("OSEA") and by United Food & Commercial Workers ("UFCW") Local 555. "[W]here [a] statement is from a proponent of the bill, and the statement is not inconsistent with statements from the legislators, the statement can be indicative of legislative intent." *Childress v. Or. Bd. of Psych.*, 327 Or. App. 48, 56, 533 P.3d 1099 (2023) (citation omitted). Here, both statements support providing "just cause" protections for classified school employees and are consistent with the staff measure summary that the bill "[e]stablishes just cause dismissal protections for classified school employees." Decl. Holly Lloyd ("Lloyd Decl."), ECF [7], Ex.

B, at 2; *see id.* at Exs. C-D. However, neither the statements nor the summary make any reference, either directly or indirectly, to civil liability or enforcement mechanisms. *See id.* at Exs. B-D. Thus, these statements do not support the proposition that the legislature intended to create a private right of action to enforce ORS § 332.544.

Accordingly, neither the text, context, nor legislative history of ORS § 332.544 indicates that the legislature expressly or impliedly intended to create a private right of action as a remedy for a violation of the statute.

**B.    Court-Created Common-Law Cause of Action**

Plaintiff next argues that if there is no discernable legislative intent to either create or deny a right of action, the Court should create a common-law right of action to enforce ORS § 332.544.

Where the text, context, and legislative history of a statute do not indicate whether the legislature intended to create a right of action, a court may "in limited circumstances" create a common-law cause of action. *Doyle*, 356 Or. at 345. When doing so, "the court must then decide whether creating a common-law right of action would be consistent with the statute, appropriate for promoting its policy, and needed to ensure its effectiveness." *Id.* at 363. The court should consider:

> "the nature of the legislative provision at issue, the adequacy of existing claims for relief and associated remedies, the extent to which a common-law right of action will aid, supplement, or interfere with existing claims and remedies and other means of enforcement, the significance of the purpose that the legislative body is seeking to effectuate, the extent of the change in existing common-law principles that provision of a right of action would produce, and the burden that the right of action would place on the courts."

*Id.* at 363-64.

Additionally, "'[i]f there is any chance that invasion into the field by the court's establishment of a civil cause of action might interfere with the total legislative scheme, courts should err on the side of non-intrusion because it is always possible for the legislature to establish such a civil cause of action if it desires.'" *Id.* at 347 (quoting *Burnette v. Wahl*, 284 Or. 705, 712, 588 P.2d 1105 (1978)). "Courts should exercise restraint in fields in which the legislature has attempted fairly comprehensive social regulation." *Id*. The Court considers the *Doyle* factors in turn.

First, as for the nature of the statutory duty, ORS § 332.544(2) specifically states: "A classified school employee shall have the right to be dismissed, demoted, or disciplined only for just cause." This implies a specific duty to school districts to not dismiss, demote, or discipline a classified school employee unless there is just cause, and defendant does not contend otherwise. *See* Def. Mot. 3-5 (arguing only that the legislature did not expressly or impliedly intend to create a private right of action for violation of the duty). Plaintiff asserts that defendant has violated that specific statutory duty by terminating plaintiff without just cause. Plaintiff further argues that a court-created cause of action to enforce the statutory duty would be similar to a wrongful discharge claim. "The elements of a wrongful discharge claim are simple: there must be a discharge, and that discharge must be 'wrongful.'" *Moustachetti v. State*, 319 Or. 319, 325, 877 P.2d 66 (1994) (citing *Nees v. Hocks*, 272 Or. 210, 218, 536 P.2d 512 (1975)).

However, although plaintiff has identified elements of his proposed common-law claim, "[i]f there is any chance that invasion into the field by the court's establishment of a civil cause of action might interfere with the total legislative scheme, courts should err on the side of non-intrusion because it is always possible for the legislature to establish such a civil cause of action if it desires." *Burnette*, 284 Or. at 712. "Courts should exercise restraint in fields in which the legislature has attempted fairly comprehensive social regulation." *Doyle,* 356 Or. at 347. In *Lowry*, Judge You declined to create a common-law remedy under a mandatory reporting statute based on *Doyle*'s warnings not to interfere where the legislature has "attempted fairly comprehensive social regulation." *Lowry*, 2018 WL 5780849, at *8 (quoting *Doyle,* 356 Or. at 347). Although the court did not specify what qualifies as a "fairly comprehensive social regulation," the court found that "[t]he Oregon legislature has implemented comprehensive social regulations regarding child welfare." *Id.* (citing Or. Rev. Stat. chs. 417, 418, 419B (2017)). Here, it is clear the Oregon legislature has implemented comprehensive social regulations regarding the state's administration of public education. *See* Or. Rev. Stat. chs. 326-353 (2025). Creating a common-law cause of action under ORS § 332.544 could thus risk interfering with the overall legislative scheme. The court should be "reluctant to supply elements of a common-law claim for relief . . . whose creation could affect the nature of the statutory duty." *Doyle*, 356 Or. at 370 (citing *Burnette*, 284 Or. at

712).  Therefore, this factor weighs against creating a common-law cause of action.

As for the adequacy of existing remedies and the extent to which a common-law cause of action "will aid, supplement, or interfere with existing claim and remedies and other means of enforcement," *Doyle*, 356 Or. at 363-64, plaintiff argues that a common-law cause of action would not interfere with his existing remedies and that, absent a common-law cause of action, plaintiff would be without remedy for an alleged violation of ORS § 332.544(2).

As an initial matter, plaintiff's reference to ORS § 332.554, which disclaims a private right of action but provides that the State Board of Education shall enforce the statute, raises, at the very least, the possibility that plaintiff may have an administrative remedy for an alleged violation of ORS § 332.544. Moreover, although plaintiff's argument that his three other claims do not adequately address the alleged violation of ORS § 332.544 is well-taken, that does not mean that there is no other adequate remedy.  For example, like in *Doyle*, declaratory relief may be available.  *See* 356 Or. at 372.  Plaintiff could also seek supplemental relief under ORS § 28.080 for any cognizable damages that resulted from a violation of ORS § 332.544.  *See Morgan v. Sisters Sch. Dist. No. 6*, 353 Or. 189, 200, 301 P.3d 419 (2013) (holding that supplemental relief under Declaratory Judgments Act includes assessment of damages).  Additionally, plaintiff alleges that his employment "contract was effective from July 1, 2023[,] through June 30, 2024[,] and addressed the term of his employment, as well as his salary and benefits." Compl. ¶ 6.  Therefore, a contract claim may also be available.  "Because [other remedies] would be effective to redress the injuries that plaintiff[] assert[s], the adequacy of such relief disfavors the provision of an additional common-law claim for relief sounding in tort." *Doyle*, 356 Or. at 373-74.

Although plaintiff argues that a common-law cause of action would not interfere with existing remedies, the damages that plaintiff seeks would also be available in a declaratory judgment or breach of contract action.  Plaintiff does not show that a common-law cause of action would aid or supplement existing claims or remedies.  Accordingly, these factors weigh against creating a common-law cause of action.

As for the significance of the purpose of the statute, establishing "just cause" protections

for classified school employees is undoubtedly important. However, the larger question is "[w]hether the statutory purpose is so important, as a matter of public policy, that the legislature would have provided an additional right of action if it had considered the matter." *Id.* Here, it is difficult to determine "whether creation of an additional common-law right of action, as opposed to [other remedies], is necessary or appropriate to effectuate the legislature's purpose." *Id.* at 375. This factor weighs against creating a common-law cause of action.

As for the extent of the change in the law, plaintiff suggests that recognizing a common-law cause of action for violations of ORS § 332.544 would change common-law principles only for classified school employees who meet the statutory definitions. Although such a change may not have implications as significant as those in *Doyle*, here, plaintiff still asks the Court to create a new tort right of action that provides him with lost wages and benefits and future lost wages and benefits. *See id.* at 375-76. And as previously explained, a declaratory judgment or contract claim would likely be "adequate to redress [plaintiff's] economic losses," and declaratory relief would "also provide[] [him] with an important declaration of rights that a tort recovery would not." *Id.* at 376. Accordingly, "creating a tort claim that would include economic damages alone—the only cognizable damage remedy that plaintiff[] seek[s on his statutory tort claim]—also would not be necessary to effectuate the purpose of the legislature in enacting" ORS § 332.544. *Id.* This factor weighs against creating a common-law cause of action.

As for the burden that a common-law cause of action would place on courts, plaintiff argues that any burden would be limited to claims by classified school employees who are not covered by a union agreement or civil service rules. The Court agrees that that the creation of a common-law right of action to enforce ORS § 332.544 would likely not place a significant burden on the courts. This factor weighs in favor of creating a common-law cause of action.

On balance, the factors weigh against this Court's creation of a common-law right of action to enforce ORS § 332.544, particularly considering the availability of other adequate remedies and the risk of interfering with the state's comprehensive social regulations regarding public education. *See Doyle*, 356 Or. at 347 (quoting *Burnette*, 284 Or. at 712). Accordingly, the Court declines to create a common-law

cause of action as a remedy for a violation of ORS § 332.544.

**C.      Leave to Amend**

In the alternative, plaintiff seeks leave to amend to allege a wrongful discharge claim based on a violation of ORS § 332.544.  Generally, courts should freely grant leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013).  However, leave to amend "is not to be granted automatically." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990).  Leave to amend may be denied due to "undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, . . . [and] futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The defendant bears the burden of establishing prejudice or making a "strong showing" that the other factors apply.  *Eminence Cap., LLC v. Aspen, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Although defendant does not refer to the leave to amend standard, defendant appears to argue that amendment would be futile.  *See* Def. Reply Supp. Def. Mot. to Dismiss, ECF [8], at 4-5. "[W]rongful discharge is an interstitial tort, designed to fill a gap where a discharge in violation of public policy would otherwise not be adequately remedied."  *Dunwoody v. Handskill Corp.*, 185 Or. App. 605, 613, 60 P.3d 1135 (2003)).  An employee may only bring a wrongful discharge claim if they were discharged for (1) exercising a job-related right that reflects an important public policy, or (2) fulfilling a public duty or societal obligation.  *Babick v. Or. Arena Corp.*, 333 Or. 401, 407, 40 P.3d 1059 (2002) (citations omitted).  Under either prong, the plaintiff "must establish a 'causal connection' between a protected activity and the discharge." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1051 (9th Cir. 2012) (internal quotation marks and citations omitted).  "A 'causal connection' requires a showing that 'the employee's protected activity [was] a substantial factor in the motivation to discharge the employee." *Id.* (alteration in original) (internal quotation marks and citations omitted).  "[T]o be a substantial factor, the employer's wrongful purpose must have been a factor that made a difference in the discharge decision." *Id.* (alteration in original) (internal quotation marks and citations omitted).

"Unless plaintiff can demonstrate that his discharge was based on one of [the two] exceptions to the at-will employment rule, his discharge is not actionable at common law." *Lamson v. Crater Lake Motors, Inc.*, 216 Or. App. 366, 376, 173 P.3d 1242 (2007). "[T]he existence of a contractual relationship, by itself, does not foreclose an employee from bringing a claim for common-law wrongful discharge"; however, the ultimate question is "whether the remedies provided by contract adequately redress the alleged injury." *Dunwoody*, 185 Or. App. at 614 (finding existing remedies to be inadequate "[g]iven the limited nature of [the employment] contract and the substantial divergence between what [the plaintiff] is entitled to recover under the two different theories").

Plaintiff's complaint already includes a wrongful discharge claim but based on a different theory. Claim Four alleges that defendant fired plaintiff to prevent him from taking protected family medical leave, which implicates the first prong of a wrongful discharge claim because plaintiff alleges that he was terminated for exercising a job-related right in the form of taking protected leave. *See Babick*, 333 Or. at 407. Plaintiff acknowledges that a wrongful discharge claim based on a violation of ORS § 332.544 does not fit in either of the two prongs for a wrongful discharge claim because plaintiff instead alleges that he was denied a statutory right.

As plaintiff concedes, he cannot show that his discharge was based on one of the two exceptions; thus, "his discharge is not actionable at common law." *Lamson*, 216 Or. App. at 376. Plaintiff also cannot show a causal connection between the asserted protected activity—dismissal without just cause—and his termination because the alleged denial of just cause protections could not have been a substantial factor in motivating his termination. Finally, as described previously, it appears that plaintiff has "an adequate existing remedy [that] protects the interests of society so that there is no need to extend an additional remedy for wrongful discharge." *Delaney v. Taco Time Int'l*, 297 Or. 10, 681 P.2d 114 (1984). In *Dunwoody*, the court held that although plaintiff could—and did—bring a contract claim, a wrongful discharge claim was also available because "her contract damages [were] not adequate to remedy the personal injuries she suffered due to her alleged wrongful discharge." 185 Or. App. at 618. Here, it is not clear what damages are recoverable under the applicable employment contract, as neither party has provided

the contract to the Court. However, unlike in *Dunwoody*, plaintiff seeks damages only for lost wages and benefits and future lost wages and benefits on the statutory tort claim that he seeks to amend,[2] and those damages would presumably be available under a declaratory judgment or breach of contract claim. As such, plaintiff has an adequate existing remedy. Because plaintiff does not have an actionable wrongful discharge claim for the alleged violation of ORS § 332.544, amendment would be futile. Accordingly, the Court denies plaintiff's request for leave to amend.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss, ECF [4], is GRANTED. Plaintiff's second claim for relief for statutory tort is dismissed.

IT IS SO ORDERED.

DATED this 1st day of August, 2025.

Adrienne Nelson
United States District Judge

---

[2] Plaintiff does seek damages for "emotional distress, humiliation, pain and suffering, and harm to his personal and professional reputation" for his fourth claim for wrongful discharge, Compl. ¶ 48, but that claim concerns his invocation of protected leave, not a violation of his just cause protections.